## UNITED STATES v. EDWARDS.

*(District Court, D. Colorado. June 12, 1889.)*

PUBLIC LANDS—MINERAL LANDS.

Land returned on the government survey as mineral land, of broken and rugged surface, with every indication of mineral ground, but on which no mines have been located, though in the vicinity of valuable mines, and which is unfit for cultivation and entry as agricultural lands, is within the meaning of act Cong. June 3, 1878, allowing timber to be taken from mineral lands on the public domain for building, agricultural, mining, or other domestic purposes.

At Law.

*John D. Fleming*, Dist. Atty., for the United States.

*J. B. Belford*, for defendant.

HALLETT, J. This action is to recover the value of timber taken from public lands in Eagle county in this state. All facts alleged in the complaint are admitted, excepting the character of the land from which the timber was taken; and as to that matter, the land is described with a view to ascertain whether the case is subject to the act of June 3, 1878, (20 St. 88,) allowing timber to be taken from mineral lands of the public domain "for building, agricultural, mining, or other domestic purposes." In the statement of facts it appears that the land is of "a broken and rocky surface, cut up by ledges and ravines, and with every indication of being mineral ground." In the plat of the government survey it was returned as mineral land. No mines have been found or located on any of the subdivisions from which the timber was taken, but valuable mines have been opened in the same township, and within a few miles of that place. The lands appear to be high and rugged mountains, unfit for cultivation or pasturage. Although no mines have been found in them, they are of a character to contain mines, and may hereafter prove to be valuable for mining purposes. So far as it relates to the matter in issue, the act of 1878 is as follows:

"That all citizens of the United States and other persons, *bona fide* residents of the state of Colorado, * * * shall be, and are hereby authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States except for mineral entry."

It will be observed that the lands referred to from which timber may be taken are such as are subject to entry as mineral lands, as distinguished from those which may be occupied under the pre-emption, homestead, and other acts relating to agricultural lands. In the practice of the land department of the government these are classified by the surveyors employed to survey public lands, and marked on the plats of such surveys as "mineral lands." But this classification is subject to review in the land-office, and may be set aside on proof that the lands are more valuable for agricultural or pastoral use than for any metal they

may contain. So that the character of the land, whether mineral or agricultural, is always, when contested, a matter of fact to be decided on evidence, rather than upon the classification in the land-office. But it is not altogether a question of finding valuable ore or metal in the ground from which the timber is taken. Obviously the act of congress is not limited to land which is or may be actually occupied for mining purposes. After location made, the timber on a mining claim belongs to the claimant, and it cannot be supposed that congress intended to give it to another. Furthermore, the grant is of timber on lands subject to mineral entry, and not subject to entry as agricultural lands, which means such as may be taken for mining purposes, as distinguished from such as have been taken in that way. Without attempting to describe mineral lands in a way which may be sufficient for all cases arising under the act of 1878, it seems clear that the lands mentioned in the complaint and in the statement of facts are of that character. They are in a mountain region, in the vicinity of valuable mines, and have some indications of valuable metals in them. They are unfit for cultivation and for pasturage, and are not subject to entry under the pre-emption or other laws relating to agricultural lands. It is conceded that the timber was taken and used for the purposes mentioned in the act, and the defendant is a citizen of the state, and thus entitled to the benefit of its provisions. Judgment will be entered for defendant.